**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SYSTEM ENTERPRISES LLC DBA FUNSPARKS;<br><br>Plaintiff,<br><br>v.<br><br>JINJIANG LUJUN INTERNATIONAL TRADE CO., LTD. DBA HMLC SPORT;<br><br>Defendant. | Case No. |

**<u>DECLARATION OF STEVEN MUELLER</u>**

I, Steven Mueller, declare and state as follows:

1. I am the Founder and President of System Enterprises LLC DBA Funsparks ("Funsparks"). I have knowledge of the facts stated herein based on personal knowledge and my review of the documents and websites referenced herein. If called upon to do so, I could and would testify competently to the matters stated herein.

2. I submit this declaration in support of Funsparks' *Ex Parte* Application for Entry of a Temporary Restraining Order, Expedited Discovery Order, and Order to Show Cause for Preliminary Injunction.

**PLAINTIFF'S BUSINESS AND INTELLECTUAL PROPERTY**

3. Funsparks is a family-run sports and active games manufacturing company that creates innovative indoor and outdoor games. Its flagship product, which I invented and designed, is an innovative racquet-based game that requires two or more players to hit a birdie through a net, that has a rectangular cut out, over to the players on the other side (the "Jazzminton® Sport Game"). The unique net design was created with the intention to make the game convenient to be played

indoors or outdoors, without being restricted by the conventional paddle and racquet game requirements like a court, boundaries or costly club memberships.

4. As early as 2019, I began developing a game that would be like badminton but can be played in any setting. After putting much effort into designing the game, I released the first test concept in November 2021. For three years, we continuously refined and tested the game with various versions of the net and birdies to ensure optimal performance, resulting in the current version of the Jazzminton® Sport Game.

5. Funsparks first sold the product through its direct-to-consumer website, www.funsparks.com, and subsequently expanded to sell it through our Jazzminton® storefront on Amazon.com, from April 2022 onwards. Funsparks' Amazon storefront has over 507 customer reviews with 4.5-star rating for the Jazzminton® Sport Game. Along with this, the Jazzminton® Sport Game has 335 reviews with 4.75 stars by customers on the Judge.me app, which is a customer review-based app for rating products. Funsparks has also expanded to selling the Jazzminton® Sport Game on other online e-commerce platforms like Target as well as Dick's Sporting Goods.

6. On October 26, 2022, to protect its original design of the game net, Funsparks filed U.S. Design Patent Application No. 29/867,461 covering those ornamental aspects of the Jazzminton® Sport Game, titled "Game Net" (the "Game Net Design").

7. On July 1, 2025, U.S. Design Patent No. D1,091,799 (the "D799 Patent") was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Funsparks. Raphael Oliver Schwyter and myself are the two named inventors of the D799 Patent.

8. Funsparks is the owner of all right, title, and interest in the D799 Patent. The D799 Patent is assigned on its face to Funsparks, which was recorded with the USPTO on April 9, 2025.

9. Jazzminton® Sport Game's success and generated is the result of extensive product development and testing, that has resulted in a game that incorporates efficiency and safety using high-quality materials.

10. Funsparks advertises and sells its Jazzminton® Sport Game, under the federally registered trademark JAZZMINTON.

11. Ever since 2022, Funsparks has spent substantial time, money and other resources in developing, advertising and marketing of the Jazzminton® Sport Game. Funsparks has spent millions of dollars to date in advertising, and is expected to spend hundreds of thousands more before the end of the year.

12. Funsparks has generated millions in lifetime revenue to date through the sales of Jazzminton® Sport Game and has sold tens of thousands of units of the Jazzminton® Sport Game via the Funsparks website and Amazon storefront to date.

13. Jazzminton® Sport Game has also obtained substantial media coverage from online publications and news outlets such as WISH-TV, Yahoo! News and News9, and has been featured on mainstream media channels such as AP Associated Press, Today Show, Good Morning America, ABC news, Life Style Live!, and WFAA Daybreak.

**FUNSPARKS' ENFORCEMENT OF ITS RIGHTS**

14. Funsparks' success has resulted in significant infringement of its intellectual property rights, specifically the D799 Patent. In November of 2024, after a year and a half of selling the Jazzminton® Sport Game, Funsparks discovered global infringers and infringing designs had begun flooding U.S. and international marketplaces with cheap imitations of the Jazzminton® Sport Game (the "Infringing Product"). The Infringing Product looks practically

identical to genuine, authorized Jazzminton® Sport Game and are marketed using substantially similar, if not utterly identical marketing methods to Funsparks.

15. Funsparks quickly identified a user associated with the following name: Jinjiangshilujunguojimaoyiyouxiangongsi DBA HMLC Sport ("Defendant") as a major source and distributor of the Infringing Product. A true and correct copy of the page showing this information is attached. Upon information and belief, Jinjiangshilujunguojimaoyiyouxiangongsi is anglicized Chinese, which roughly translates to Jinjiang Lujun International Trade Co., Ltd. Defendant operates an online storefront on the Amazon.com platform (Seller ID: A1YL4UTSIXYHFY) (the "Online Storefront"). Through its Online Storefront, Defendant advertises, sells, offers for sale and distributes the Infringing Product under multiple listings. This includes, but is not limited to, the ASINs: B0FP2K93SF, B0DTGD325G and B0FT1P4JJD, incorporating the Game Net that is the claimed design of the D799 Patent with the paddle game being sold.

16. The full extent of the infringement is not known yet, but it is clearly vast. Defendant may operate on multiple platforms under different names, taking advantage of the confusion that has been created by those promoting the Infringing Product as if it was a genuine Jazzminton® Sport Game.

17. Defendant facilitates sales of the Infringing Product by designing its Infringing Product listings to appear to an ordinary consumer as an authorized retailer, outlet store, or wholesaler selling genuine, authorized Jazzminton® Sport Game. True and correct copies of representative screenshot printouts from the Online Storefront are attached hereto as **Exhibit A**.

18. From Funsparks' investigations, we have learned that Defendant is selling the Infringing Product at generally deeply discounted prices often associated with cheaply made knockoffs.

19. At my direction, individuals at ESCA Legal have conducted test purchases from the Online Storefront, which confirmed that Defendant is in fact selling and distributing the Infringing Product upon payment of a fee, including into this District, and that the Infringing Product appears to be of markedly inferior quality to the genuine Jazzminton® Sport Game. True and correct copies of photographs taken of both Funsparks' Jazzminton® Game Net and Defendant's Infringing Product are attached hereto as **Exhibit B**.

20. Defendant does not conduct business with Funsparks and has no right or authority to use the Game Net covered by the D799 Patent, nor is it an authorized retailer of genuine Jazzminton® Sport Game. Further, we have no reason to believe that the Defendant is a reseller of the genuine Jazzminton® Sport Game, given the markedly different and inferior quality of the Infringing Product especially the game net.

**INJURY TO PLAINTIFF**

21. Defendant's marketing, promotion, sale, and distribution of the Infringing Product takes place without authorization and without compensation to Funsparks. As a result of Defendant's actions, the Infringing Product, including the patent protected Game Net Design is being sold at generally extremely low prices and is being made and distributed with no restriction. This has caused, and is continuing to cause, irreparable damage to Funsparks' reputation.

22. Funsparks has invested heavily into its business and incurs significant costs in manufacturing and marketing genuine Jazzminton® Sport Game. The revenue from Funsparks' sales of Jazzminton® Sport Game is crucial to its financial health. As such, Funsparks has already

suffered, and is likely to continue to suffer serious financial injury if its intellectual property rights were not enforced.

23. Defendant is causing irreparable and significant harm to Funsparks and the Jazzminton® Sport Game by selling the Infringing Product including the Game Net of which is the claimed design of the D799 Patent. By selling such products, Defendant is benefiting from its use of the claimed design of the D799 Patent, to Funsparks' serious financial detriment. Defendant's actions are causing irreparable harm to Funsparks' business opportunities and sales.

24. Moreover, Defendant's advertisement, sale, and distribution of its Infringing Product is causing irreparable harm and continues to put the safety of consumers that are misled into purchasing the Infringing Product unless the requested relief is granted.

25. Because of the above harm, Funsparks will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued.

26. To my knowledge, Defendant has no counterclaims against Funsparks.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 21, 2025 in ___Clearwater, __FL__.

_______________________________
Steven Mueller